IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Tariton A. Callier, | Case No. 1:10 CV 524 |
| Petitioner, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| J. T. Shartle, et al., | |
| Respondents. | |

### INTRODUCTION

*Pro se* Petitioner Tariton Callier filed this Petition for Writ of Habeas Corpus (Doc. No. 1) under 28 U.S.C. § 2241. Petitioner also filed a Petition for Injunctive Relief Pursuant to 28 U.S.C. §1361 (Doc. No. 3). Petitioner is currently serving a 292 month sentence at the Federal Satellite Location (FSL) in Elkton, Ohio. He seeks a second reconsideration of his administrative request for twelve months' placement in a Community Corrections Center (CCC) under the Second Chance Act of 2007.

Petitioner's projected release date is March 24, 2011. Fifteen months before that date, he filed a Request for Administrative Remedy seeking twelve months' placement in a CCC. A FSL Elkton staff representative denied the request on January 26, 2010, explaining that Petitioner was previously recommended to only 150-180 days' CCC placement under the Second Chance Act. At Petitioner's insistence, however, that recommendation was reconsidered. The second review confirmed 180 days was sufficient for CCC placement. Petitioner appealed to Warden Shartle, who denied his request. The Warden explained:

> [T]he United Team reviewed the resources of the facility contemplated, the nature and circumstances of your offense, the history and characteristics of your institutional adjustment, as well as any potential statement of your sentencing court or pertinent policy statement issued by the United States Sentencing Commission, included in the Judgement and Commitment Order.

(Doc. No. 1-3, Letter from Shartle to Callier of 2/17/10.) Without explanation, Petitioner maintains further exhaustion of his administrative remedies would be futile.

Petitioner asserts Respondent violated his right to due process and rights under the Second Chance Act. He believes the Bureau of Prisons (BOP): misinterpreted the Act by failing to evaluate his CCC placement under the five factors set forth in 18 U.S.C. § 3621(b)(2); determined he was only entitled up to 180 days placement based on a directive from the General Counsel, which was criticized by the Act; and failed to consider the comments of the sentencing judge as well as Petitioner's educational achievements while in prison.

Petitioner attaches a one page copy of the transcript from his sentencing hearing held on February 16, 1995 before Judge George White. *See U.S. v. Walker*, No. 1:94 CR 0005 (N.D. Ohio, Doc. No. 284). Petitioner highlights Judge White's comment that "if [he] had the authority under the law" he would sentence Petitioner to a lengthier period of probation. In addition to this comment, Petitioner also believes the BOP violated Section 231 of the Act by refusing to recommend him to twelve months' placement as an incentive award for all of his educational achievements. He attaches eleven Certificates of Completion or Achievement to his Petition to demonstrate his efforts to improve himself while incarcerated (Doc. No. 1-2).

2

**ANALYSIS**

**Exhaustion**

Federal prisoners are required to exhaust administrative remedies before filing a habeas petition under 28 U.S.C. § 2241. *Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir.1981). Petitioner concedes he has not properly exhausted this matter administratively. Thus, the question is whether to forgive the lack of exhaustion.

One of the reasons for exhaustion is to prepare a record for the court. *See Brice v. Day*, 604 F.2d 664 (10th Cir. 1979). Petitioner has presented only glimpses of the record. Copies of his administrative request, the annotated staff reply, and Warden Shartle's letter compile the entire administrative appeals record. Based on this abbreviated record, the Court finds Petitioner did not properly exhaust his administrative remedies. Without a demonstrated excuse, he simply halted the appeal process and filed in this Court. Since that time, the deadline to continue exhaustion has expired. The BOP could now refuse to address the merits of his challenge as untimely. The resulting stalemate undermines the administrative exhaustion process. The Sixth Circuit has explained this problem as follows:

> If a habeas corpus court were to allow a prisoner to simply wait until the time prescribed by the regulations for filing his appeal has expired and then file a petition for a writ of habeas corpus which a habeas corpus court would consider on its merits, the doctrine of exhaustion of administrative remedies would be circumvented.

*Marchesani v. U.S. Parole Comm'n*, 1991 WL 153131, *2 (6th Cir. 1991). Thus, while exhaustion is not a strict statutory or otherwise jurisdictional requirement, *see, e.g., Gates-Bey v. U.S. Parole Comm'n*, 2001 WL 303512 (6th Cir. 2001) (noting Section 2241's exhaustion prerequisite is "not a statutory requirement"), a federal prisoner who procedurally defaults on his administrative claims

3

must still demonstrate cause and prejudice for the omission. *See Engle v. U.S.*, 26 F. App'x 394, 396 (6th Cir. 2001) (citing *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996)).

Petitioner has not demonstrated cause for his procedural default. While his requested date of release approaches each day, he may argue further delay would moot his request. Although a procedural bar should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if the merits are easily resolved against a petitioner. *See Lambrix v. Singletary*, 520 U.S. 518 (1997). This Court shall therefore also address the merits. Here, Petitioner's claim suffers from another fatal defect on the merits.

**Not Entitled to Habeas Relief**

Petitioner argues his right to due process was violated because Respondent misinterpreted the requirements of the Second Chance Act. The premise of this challenge relies on his belief that the Act requires twelve months' placement in a CCC for certain prisoners. Petitioner is mistaken. There is no mandate in the Act directing the BOP to place every prisoner in a CCC twelve months before his or her scheduled date of release.

Congress passed the Second Chance Act of 2007 in part to amend 18 U.S.C. § 3624(c)(1), which charges the BOP with facilitating a prisoner's reentry into society. The substance of the amendment provides: "the BOP Director shall ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term *(not to exceed 12 months)*, under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." Second Chance Act, Pub. L. 110-199, § 251, 122 Stat. 660, 692 (effective April 9, 2008) (emphasis added). The statute is clear: prisoners are entitled to placement in a CCC *up to* 12 months.

4

On April 14, 2008, the BOP issued an interim policy memorandum to address CCC placement considerations under the provisions of the Act. The memorandum requires placement decisions be made on an individual basis with reference to the five-factor criteria set out in Section 3621(b). Prisoners previously denied placement were to be reconsidered under the standards set out in the memorandum. The BOP subsequently issued regulations, effective October 21, 2008, to set forth procedures for evaluating when a prisoner is eligible for transfer. *See* 28 C.F.R. §§ 570.20-570.22. Unlike the April 14, 2008 memorandum, the regulations do not include the requirement for Regional Director approval for pre-release placement beyond six months.

Respondent twice considered Petitioner's eligibility under the relevant criteria. The fact Petitioner was not assigned twelve months' placement in a CCC is not a violation of the statute. Petitioner's citation to the General Counsel's memorandum is old law which categorically limited a prisoner's placement in a CCC. This directive was set aside by enactment of the Second Chance Act. Nothing in the record even suggests the BOP relied on the General Counsel's memorandum to determine an appropriate CCC term for Petitioner. To the contrary, every evaluation completed by the BOP references the Second Chance Act factors in determining Petitioner's CCC placement.

Even if there were a concern Petitioner was denied privileges of the Act, the remedy is not an immediate transfer. Rather, Petitioner's remedy is a proper exercise of discretion by the BOP. *See Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 251 (3d Cir. 2005). Petitioner has no due process right, protected by the Fifth Amendment, to be placed in a CCC earlier than the date on which the BOP assigns him -- as long as it has considered the factors set forth in Section 3621(b) as required by the Act. The BOP has the vested right to exercise complete and absolute discretion regarding incarceration and classification of a lawfully convicted prisoner. 18 U.S.C. § 3621. There is no

constitutional or inherent right of a convicted person to be released before the expiration of a valid sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).

Finally, there is no basis upon which this Court can grant Petitioner's request for injunctive relief. Section 1361 confers jurisdiction on district courts to compel a government official or agency to perform a duty owed to a plaintiff or to make a decision. It does not authorize the court to direct or influence the exercise of discretion of the officer or agency in the making of the decision. Because Respondent owes no duty to Petitioner to place him in a half way house for twelve months, this Court is without power, under these circumstances, to issue a Writ of Mandamus. Further proceedings would be futile, and the Motion for Injunctive Relief (Doc. No. 3) is denied.

## CONCLUSION

Accordingly, the Petition for Writ of Habeas Corpus is dismissed under 28 U.S.C. §2243. This Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and a certificate of appealability shall not issue.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

September 10, 2010